# THE RISDON IRON and LOCOMOTIVE WORKS COMPANY *vs.* ALEXANDER YOUNG.

## SUBMISSION.

HEARING, JUNE 20, 1893.        DECISION, SEPTEMBER 14, 1893.

### JUDD, C.J., BICKERTON AND FREAR, JJ.

A patent for a combination is not infringed by the substitution of an element that performs a substantially different function, or of one not known at the date of the patent as a proper substitute for the omitted element.

The burden of proof upon a question of infringement lies upon the party alleging infringement.

A patent raises a presumption that the device is patentable.

A device to be patentable need not perform its work better than the same kind of work has previously been performed.

A change in the form of one element of a patented combination, though slight, if it works a new and useful result, may avoid infringement.

A patent does not cover more than is claimed, nor more than is described in such a way as to enable others to construct it.

Infringement of a patent for automatic feed rolls with longitudinal ribs is not proved by the mere fact that automatic feed rolls with spiral ribs with a pitch of half the circumference of the rolls have been manufactured and sold.

### OPINION OF THE COURT, BY FREAR, J.

This is a submission upon agreed facts, which are substantially as follows:

The automatic furnace-feeders heretofore used in sugar mills consisted of two rolls longitudinally grooved or corrugated, placed in a horizontal position parallel to each other and a short distance apart. These were made to revolve toward each other from the top. The trash was delivered to them from above through a hopper. The rolls, being grooved, drew the trash down between them into the

furnace. When the trash was in sufficiently long pieces, it piled up on the rolls and prevented the passage of air into the furnace; but when finely broken up, or in the shape of fine chips from diffusion batteries, it fell through between the rolls, which were required to be some distance apart in order that the necessary quantity of fuel might pass, and left an opening through which the air rushed into the furnace, thereby interfering with the draft and combustion.

To obviate the entrance of air into the furnace, and at the same time to furnish a continuous and positive amount of fuel, Mr. Dyer substituted longitudinal ribs or teeth for the grooves or corrugations on the rolls, the outer edge of each rib on one roll, when revolving, passing between two ribs on the other roll; the rolls are also placed so close together as to leave no unobstructed passage between them. The fine trash then cannot pass into the furnace without the revolution of the rolls; but, when the rolls revolve, the trash descends, moving from side to side, held by a rib on one roll until the next rib on the opposite roll moves down and closes the gap, thus preventing the air from passing through as long as there is fuel enough to fill the space between the rolls.

Mr. Young substituted helical or spiral for longitudinal ribs on the rolls. These ribs may run from one end to the other of the rolls, being left hand on one roll and right hand on the other, or they may run from the middle to the ends of each roll, the ribs on one half of each roll forming a right hand helix and those on the other half a left hand helix, a left hand helix on one roll being always opposite a right hand helix on the other roll. The pitch of the helix may be any degree, but half the circumference of the roll is preferred for the pitch. This arrangement is claimed to give a more divided, uniform and scattering feed into the furnace than could be obtained by rolls with longitudinal ribs, and to bring a more uniform strain on the gears which drive the rolls, and also to more effectually prevent a rush of air into the furnace when the supply of fuel is inadequate to fully cover the rolls.

The complainant is the owner by assignment of a patent issued to Mr. Dyer, dated August 23, 1892, being Hawaiian Patent No. 88, for the feed rolls above described as made by Mr. Dyer. The defendant is the owner of a patent issued to him dated September 6, 1892, being Hawaiian Patent No. 89, for the feed rolls above described as made by him.

The question submitted to the Court is whether the manufacture and sale by the defendant of his device constitutes an infringement of the plaintiff's patent. No question is raised as to the patentability of the Dyer device. Indeed, the facts· agreed upon are such that the Court must assume it to be patentable, for the purposes of the present case, whatever might be the finding, had evidence been introduced as to its utility and novelty.

It was argued by counsel for the plaintiff that if the Young device differs substantially in any respect from the Dyer device, it must nevertheless be regarded only as an improvement upon it, the use of which, since it involves the principle of the Dyer device would require a license from the owner of the Dyer patent; the use, by the owner of the Dyer patent, of the improvement, if patented, also requiring a license from the patentee of the improvement. No such middle ground, however, can be taken. The Dyer patent is for a combination. Not only are the elements of the device old in fact, but the claim is for the combination only. This being so, every element in the combination must be regarded as public property. There may be such a thing as a patentable improvement in the form of one element of a patented combination. But the use of the improved form by its patentee would not require a license from the patentee of the combination, for the form in the combination is expressly or impliedly admitted to be old. And so if the patentable improved form, or even a substantially different old form, of one element is used with the other elements of the combination, there will be no infringement, for the combination will not be the same. There is substituted for one element another element which is substantially different,—so different,

indeed, as to be, if a patent is taken out for it, the exclusive property of its patentee.    To constitute infringement, the same elements must be used combined in the same way,— the combination must be the same.    The principle or mode of operation may be the same and yet there may be no infringement, for if one element, though utterly useless, is omitted or substantially changed, the combination will be different.    The question therefore is not whether the Young device is a mere improvement upon the Dyer device, embodying the same principle, but whether the combination is the same or different.    In other words, is the spiral rib to be regarded as only colorably different from, or as only a mechanical enquivalent for the longitudinal rib, or not?

In *Gould vs. Rees*, 15 Wall., 187, the lower court had instructed the jury "that the omission of one of the elements and the substitution of another mechanical device to perform the same function will not avoid infringement."    The Supreme Court of the United States held this to be erroneous, and stated the law to be that "an alteration in a patented combination which merely substitutes another old ingredient for one of the ingredients in the patented combination is an infringement of the patent, if the substitute performs the same function and was well known at the date of the patent as a proper substitute for the omitted ingredient, but the rule is otherwise if the ingredient substituted was a new one, or performs a substantially different function, or was not known at the date of the plaintiff's patent as a proper substitute for the one omitted from his patented combination."    In other words, there is no infringement, if the substituted ingredient, though old and well known, performs a substantially different function, or if, though old and well known, it performs the same function but was not well known as a proper substitute for the omitted ingredient.    See also *Rowell vs. Lindsay*, 19 O. G. 1565 (6 Fed. Rep., 290), and the cases there cited.

In the present case a spiral was substituted for a longitudinal rib.    It is claimed by the defendant that the

spiral rib performs substantially different functions, such as the giving of a more divided, uniform and scattering feed, the bringing of a more uniform strain on the gears, and the more effectual prevention of a rush of air into the furnace. From the specification and an inspection of the models, it does not appear clearly how a rush of air into the furnace is more effectually prevented; there would apparentlly be a more uniform strain on the gears, but this would seem to be but an incidental and unimportant advantage; and there would seem to be a more divided, uniform and scattering feed, but this also would seem to be but a slight advantage, inasmuch as the rolls are small and the ribs not very far apart, and there would be a nearly continuous uniform feed in either case, and as the fuel in either case falls in but a single line and is not scattered over the whole floor of the furnace. There is nothing to show the fact or the advantage of these differences in the effects of the devices in actual working. The Court can only make inferences from the differences in the descriptions and models. The fact of the existence or the advantages of these differences in actual working, or the contrary, if proved by competent evidence, would go far to show whether the spiral rib does or does not perform substantially different functions. So the question as to whether the spiral rib, though a well known thing in itself, is or is not well known as a proper substitute for the longitudinal rib, might perhaps easily be settled by evidence. But there is unfortunately no evidence on either of these points. The case, though depending largely upon facts, which are not agreed upon, but which should have been either agreed upon or proved by proper evidence, is left to the Court to settle upon rules of law. It is a rule of law that the burden of proof upon a question of infringement lies upon the party alleging infringement. In this case, there is nothing to show that the spiral rib is a well known substitute for the longitudinal rib, or that it performs substantially the same functions, but, on the contrary, the two devices would appear from an inspection of the

models, to work at least to some extent in different ways, and the fact that the Commissioner of Patents, after an investigation, reported in favor of a patent for the Young device, and that a patent was accordingly issued, affords a presumption in favor of the defendant's claim that the spiral rib either does perform substantially different functions or was not a well known substitute for the longitudinal rib. It is not necessary that the second invention should be an improvement upon the first or do its work in a better way. It is sufficient, if it performs substantially different functions and is useful. Nor is it necessary that the change should be great and striking. It is sufficient that there has been an exercise, however slight, of inventive genius as distinguished from mere mechanical skill. A mere change in form has often been held sufficient.

In *Davis vs. Palmer*, 2 Brock 298, a mould-board for a plough was held patentable, its face being worked to circular or spheric lines of particular radii instead of to straight lines, although it performed the same kind of work in much the same way, but with a new effect. The patentee described the radius of the larger segment of the moulding-board as about three times that of the smaller segments, but the court held the word "about" to be surplusage, and that the patent was limited to moulding-boards the radius of whose larger segment was exactly three times that of the smaller ones, but it also held that a mere slight or colorable variation would not avoid infringement. So, in the present case, the Young patent may perhaps be limited to spiral ribs of a particular pitch, namely, half the circumference of the roll as described in the specification, or, it may be, that the statement in the specification that any pitch may be used, will avoid the patent because covering more than is new in the invention. But, however that may be, while the substitution of a spiral rib with a pitch so small as to be nearly straight might be a merely colorable variation from the straight rib, just as in the case of a slight change in the shape of the mould board, yet the change from a

straight rib to a spiral rib with a pitch of half the circumference may bring about results substantially different, in which case the manufacture and sale of the new device, whether covered by a valid patent or not, would not constitute an infringement.

In *Isaacs vs. Abrams*, 14 O. G., 861, it was held that where brushes of uniform length had previously been used for cleaning railroad tracks, a brush of unequal lengths, one portion adapted to brushing the surface of the rail and the other longer portion to clearing either side of the rail, was patentable, the Court saying that " a change in the form of a machine or instrument, though slight, if it works a successful result not before accomplished in a similar way in the art to which it is applied, or in any other, is patentable."

In *Winans vs. Adam*, 15 How., 330, the majority (five Justices) of the court held that a circular car in the shape of a frustum of a cone was patentable and that the manufacture of an octagonal car was an infringement of the patent for the circular car, inasmuch as the octagonal was so nearly like the circular car as to be substantially the same thing. The minority (four Justices) were of the opinion that the circular car was not patentable, or, if it were, that there was no infringement, on the ground that the first patent should be limited strictly to the circular form claimed.

An additional reason for holding that there is no infringement in this case is that Mr. Dyer in his specification limited his claim to rolls with longitudinal ribs. And although this might cover all variations that are merely colorable, it cannot be held to cover all forms whatever. The patent does not cover more than is claimed. A patentee cannot either by securing a re-issue based upon a broader claim, or by argument, enlarge his patent so as to cover elements not falling within the terms of his specification. See *Shepard vs. Carrigan*, 116 U. S. 592, in which it was held that a patent for a skirt protector described as including a fluted band could not be enlarged so as to include protectors without fluted bands. Further, the public has rights as well as the

patentee, and to entitle the patentee to set up the use of any particular form of rib as an infringement of his patent, his description of his invention must be such that those skilled in the art may be able from the description to make that particular form. The patent cannot be allowed to cover what the patentee does not in his specification add to the stock of human knowledge. This is the consideration which he gives to the public for the exclusive use and benefit of his invention for a term of years. Can it be held in the present case, in the absence of any evidence, that the description of the rolls with longitudinal ribs would naturally suggest the use of rolls with spiral ribs?

The case of *Blackman vs. Hibbler*, 17 O. G., 107, is much in point. The patentee secured a patent for a combination of a lamp chimney with the top or upper portion constructed of mica, and a glass base to be used together, and afterwards secured a reissue in which he claimed that "while I have shown a peculiarly constructed chimney as adapted for use in connection with my base, it is obvious other kinds or styles may be used, if preferred." The Court held the reissue void, as greatly enlarging the scope of the invention by omitting one element of the combination and putting in its place another not its equivalent, saying, "It may be that the results accomplished by the use of the top piece of a lamp chimney are, in most respects, the same, whatever be the form of the top piece or the material of which it is constructed; but the result is not in all respects the same, nor would the statement that a mica top piece would be of use when firmly attached to the chimney base necessarily or naturally suggest the use of any form of top piece not so attached to accomplish the same result; and it has not been shown that any form of top-piece was known at the date of the original patent as a proper substitute for the mica top-piece described in the patent."

The Dyer claim is narrow in its terms. The invention itself stands on narrow ground, as is the case with most inventions of combinations. The Young device apparently performs

functions to some extent different from those performed by the Dyer device. There is no evidence to show that the functions performed are the same, or that the spiral rib is a well known substitute for the longitudinal rib. The fact that a patent was actually issued for the Young deivce is presumptive evidence that it differs substantially from the Dyer device. We therefore find that the manufacture and sale of the defendant's device is not an infringement of the plaintiff's patent.

F. M. Hatch, for plaintiff.

A. S. Hartwell, for defendant.